IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
WESLEY BARBER,                    )
                                  )    2:05-cv-2326-GEB-DAD
               Plaintiff,         )
                                  )
     v.                           )    ORDER*
                                  )
CLIFF SIMPSON, and                )
UNADELL TURNER,                   )
                                  )
               Defendants.        )
                                  )
```

Plaintiff moves to amend the final judgment entered in favor of Defendants on July 6, 2006, under Rule 59(e) of the Federal Rules of Civil Procedure, and in the alternative, moves for an injunction pending appeal under Rule 62(c).[1]  (Pl.'s Mot. to Am. the J. at 1; Pl.'s Mot. for an Injunction at 1.)  Defendants oppose the motions. (Defs.' Opp'n at 8-9.)

PROCEDURAL HISTORY

On February 27, 2006, Plaintiff moved for summary judgment on the issue of whether the Washoe Tribal Court exceeded its

---

*  This motion was determined to be suitable for decision without oral argument.  L.R. 78-230(h).

[1]  All subsequent references to "Rules" are to the Federal Rules of Civil Procedure.

1

jurisdiction by adjudicating an eviction action Defendants brought against Plaintiff in tribal court to regain possession of allotted land held in trust for their benefit by the United States.[2] (See Order, filed July 6, 2006, at 4.)  In his motion for summary judgment, Plaintiff argued the Washoe Tribal Court had exceeded its jurisdiction because "the United States was an indispensable party . . . [but] was in fact not a party (and could not be made a party) to the proceedings . . . ."  (See id. at 7.)

  An Order filed July 6, 2006, observed "'[a] long line of cases . . . have consistently held that, whenever Indian tribes or individual Indians sue to recover either tribal land or individual allotments, the United States is not an indispensable party,'" and under this line of cases "Indians and Indian tribes may maintain actions to protect their interest in Indian lands without joining the United States . . . ."  (Id. at 7-8 (quoting Oneida Indian Nation of New York State v. County of Oneida, 434 F. Supp. 527, 544 (N.D.N.Y. 1977), and citing Puyallup Indian Tribe v. Port of Tacoma, 717 F.2d 1251, 1254 (9th Cir. 1983); Fort Mojave Tribe v. LaFollette, 478 F.2d 1016, 1018 (9th Cir. 1973); Skokomish Indian Tribe v. E.L. France, 269 F.2d 555, 560 (9th Cir. 1959); Choctaw & Chickasaw Nations v. Seitz, 193 F.2d 456, 458 (10th Cir. 1952); Narragansett Tribe of Indians v. S. Rhode Island Land Dev. Corp., 418 F. Supp. 798, 812 (D.C.R.I. 1976).)

---

[2] "Where an allotment is held in trust the title to and control over the land remain in the United States, in trust for the use and benefit of the allottee . . . . The allottee has equitable title and the right to exclusive possession of the allotted land, subject to the supervisory power of the government." 42 C.J.S. Indians § 85  (citing Tooahnippah v. Hickel, 397 U.S. 598 (1970), and St. Marie v. United States, 24 F. Supp. 237 (S.D. Cal. 1938)).

2

1       Plaintiff had not cited any of these cases in his motion for
2  summary judgment, but rather relied on <u>Imperial Granite Co. v. Pala</u>
3  <u>Band of Mission Indians</u>, 940 F.2d 1269, 1272 n.4 (9th Cir. 1991), for
4  the proposition that the United States was an indispensable party to
5  the tribal court litigation.  (<u>See</u> <u>id.</u> at 8.)  However, the Order
6  found "the litigation involved in <u>Imperial Granite</u> . . .
7  distinguishable from that in the Washoe Tribal Court" since "'the
8  litigation [in <u>Imperial Granite</u>] was instituted by non-Indians for the
9  purpose of effecting the alienation of tribal or restricted lands, not
10 by individual Indians or a tribe seeking to protect Indian land from
11 alienation.'"  (<u>Id.</u> (quoting <u>Puyallup Indian Tribe</u>, 717 F.2d at 1255
12 n.1).)  Since "Defendants brought the Washoe Tribal Court action to
13 protect, not alienate, Indian trust lands," the Order concluded the
14 "United States was not an indispensable party to the Washoe Tribal
15 Court eviction action."  (<u>Id.</u> at 8-9.)  Accordingly, the Order found
16 Plaintiff had not shown the Washoe Tribal Court exceeded its
17 jurisdiction, denied his motion for summary judgment, and denied his
18 claims for declaratory and injunctive relief since these claims were
19 premised on the lack of tribal court jurisdiction.  (<u>Id.</u>)  The Order
20 directed the Clerk of the Court to enter judgment in favor of
21 Defendants; that judgment was entered on July 6, 2006.  (<u>Id.</u> at 9;
22 Judgment, filed July 6, 2006.)
23                              <u>DISCUSSION</u>
24 <u>I.  Motion to Amend the Judgment</u>
25      "Rule 59(e) provides a mechanism by which a . . . [district
26 court] may alter, amend, or vacate a judgment."  <u>Clipper Exxpress v.</u>
27 <u>Rocky Mountain Motor Tariff Bureau, Inc.</u>, 690 F.2d 1240, 1249-50 (9th
28 Cir. 1982).  A Rule 59(e) motion "should not be granted, absent

                                    3

1 highly unusual circumstances, unless the district court is presented
2 with newly discovered evidence, committed clear error, or if there is
3 an intervening change in the controlling law." 389 Orange Street
4 Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999); see also School
5 Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

6      First, Plaintiff argues the Court erred in distinguishing
7 Imperial Granite because "the tribal court litigation at issue here
8 was . . . instituted against an Indian . . . by Defendants . . . to
9 'effect alienation of [his] interest in 425 Barber Road . . . .'"
10 (Pl.'s Mot. to Am. the J. at 5-6.)  Although Plaintiff correctly notes
11 the context of the tribal court litigation, Imperial Granite applies
12 to litigation "'instituted by non-Indians for the purpose of effecting
13 alienation of tribal land, not by individual Indians . . . seeking to
14 protect Indian land from alienation.'" (Order, filed July 7, 2006,
15 at 8 (quoting Puyallup Indian Tribe, 717 F.2d at 1255 n.1).)  Since
16 Defendants, who are members of the Washoe Tribe, brought the tribal
17 court eviction action to protect their interest in allotted land,
18 Imperial Granite is inapplicable.  (Id.)

19      Next, Plaintiff argues "the Court erred in applying the line
20 of cases" that hold the United States is not an indispensable party
21 when "Indian tribes or individual Indians sue to recover either tribal
22 land or individual allotments."  (Pl.'s Mot. to Am. the J. at 3-4.)
23 Specifically, Plaintiff contends the "cases cited by the Court are
24 distinguishable" because "all of these cases involved Indian tribes
25 [rather than individual Indians] as plaintiffs."[3]  (Id. at 4.)  In

---

    [3]   In a footnote, Plaintiff acknowledges Oneida Indian
Nation, 434 F. Supp. at 554, stated "the United States is not an
indispensable party" when "individual Indians sued to recover . . .
(continued...)

4

addition, Plaintiff argues "in equity and good conscience" these cases should not apply because "if Plaintiff ultimately 'prevails' in the tribal court, he gains nothing (because the United States is not bound by the judgment) . . . [but] if Defendants ultimately prevail, they gain everything (because Plaintiff is bound)." (Id. at 5.)  Both of these arguments require an examination of Choctaw and Chickasaw Indians, 193 F.2d 456, a Tenth Circuit decision the Ninth Circuit adopted as the basis for its decision in Skokomish Indian Tribe, 269 F.2d at 560, and relied upon in Puyallup Indian Tribe, 717 F.2d at 1255, and Fort Mojave Tribe, 478 F.2d at 1018.

In Choctaw and Chickasaw Indians, the Tenth Circuit considered whether the United States was an indispensable party to an action by the Choctaw and Chickasaw Nations ("Nations") "to recover possession of, and establish their title to certain lands . . . ." 193 F.2d at 458.  The Tenth Circuit stated an "indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit without radically and injuriously affecting [its] interest, or without leaving the controversy in such a situation that [the] final determination may be inconsistent with equity and good conscience." Id. at 458.  The Tenth Circuit reasoned that "[s]ince, unless the United States becomes a party to the action it will not be

---

[3](...continued)
individual allotments," but argues this case "and other decisions of district courts" should "not be followed" because they "are not authoritative . . . [or] persuasive."  (Pl.'s Mot. to Am. the J. at 5, n.3.) Although Oneida Indian Nation is not controlling authority, the case is persuasive since it is consistent with the rationale of Choctaw and Chickasaw Indians, 193 F.2d 456, (see infra, pages 7-8), and since the Ninth Circuit cited it in Puyallup Indian Tribe, 717 F.2d at 1255 & n.1.

bound by any judgment entered therein, a judgment entered as between the Nations and the defendants . . . would not radically and injuriously affect the interest of the United States." Id.  Thus, "the question . . . narrow[ed] to whether a judgment could be entered as between the Nations and the defendants . . . [that] would be consistent with equity and good conscience." Id.

The Tenth Circuit noted several Supreme Court cases had "clearly recognized the rights of . . . Indians and Indian tribes to maintain actions with respect to their lands, although the United States would not be bound by the judgment in such an action, to which it was not a party . . . ." Id. at 459 (citing Heckman v. United States, 224 U.S. 413 (1912), Lane v. Pueblo of Santa Rosa, 249 U.S. 110 (1919), and United States v. Candelaria, 271 U.S. 432 (1926)); see also Poafpybitty v. Skelly Oil Co., 390 U.S. 365, 369 (1968) (stating "the allotment system would be frustrated unless both the Indian and the United States were empowered to seek judicial relief to protect the allotment").  The Tenth Circuit reasoned the Supreme Court would not have "dealt so extensively with the mere capacity of . . . Indians, the tribes, and pueblos to sue and defend in respect to their lands, if it regarded the United States as an indispensable party to the action," and concluded "the inference must be drawn that the Supreme Court recognized the right of the . . . Indian, tribe, and pueblo to maintain such an action without the presence of the United States as a party." Choctaw and Chickasaw Indians, 193 F.2d at 460.

Finally, the Tenth Circuit observed that if "the United States [was] an indispensable party, the Nations [would] be unable to prosecute a suit to establish their title to, and recover possession and use of, their lands," but that "if they [were] permitted to

1  prosecute suit, in the absence of the United States, a judgment in
2  favor of the defendants [would] not bind the United States." Id.
3  Thus, if "the United States [was] an indispensable party, the Nations
4  [would] be unable to assert their long-standing claim to the land,"
5  but if the "United States [was] not an indispensable party, the
6  defendants . . . [would] run the risk of . . . defending two lawsuits
7  . . . ." Id. at 461. The Tenth Circuit found "the equities presented
8  by the situation . . . weigh[ed] heavily in favor of the Nations," and
9  concluded that a "final decree determining the title and right to
10 possession as between the Nations and the defendant would not leave
11 the controversy in a situation inconsistent with equity and good
12 conscience." Id. Accordingly, the Tenth Circuit found the United
13 States was not an indispensable party to the litigation. Id.
14         As the preceding discussion makes evident, the rationale of
15 Choctaw and Chickasaw Indians applies with equal force to a situation
16 where an individual Indian sues to recover title or possession of an
17 allotment, particularly since the Tenth Circuit found "the Supreme
18 Court [had] recognized the right of the [individual] Indian . . . to
19 maintain . . . an action [to protect allotted land] without the
20 presence of the United States as a party." Id. at 460. Consequently,
21 Choctaw and Chickasaw Indians, and the Ninth Circuit decisions that
22 rely upon it, are not distinguishable on the basis that these cases
23 involve Indian tribes rather than individual Indians. Furthermore, as
24 in Choctaw and Chickasaw Indians, "equity and good conscience" favor
25 allowing individual Indians to maintain actions to protect allotted
26 land without joining the United States as a party; otherwise, these
27 individuals would "be unable to assert their . . . claim to the land."
28

7

See id. at 461 (finding "the equities presented by the situation . . . weigh[ed] heavily in favor of the [Indian tribe]").

Consequently, Plaintiff has not shown the Court "committed clear error." School Dist. No. 1J, 5 F.3d at 1263. Accordingly, the Rule 59(e) motion to amend the judgment filed July 6, 2006, is denied.

II. Motion for an Injunction Pending Appeal

Plaintiff moves for an injunction pending appeal enjoining Defendants "from interfering with [his] possession and enjoyment of certain real property . . . known to the parties as 425 Barber Road . . . ." (Pl.'s Mot. for an Injunction at 1-2.) Plaintiff explains "last year [Defendants] obtained from the Washoe Tribal Court a judgment and order evicting Plaintiff from his . . . home and current residence," but that "judgment is now stayed pending [his] appeal to the Inter-Tribal Court of Appeals."[4] (Id. at 3.) Although Plaintiff acknowledges Defendants cannot currently enforce the tribal court judgment and evict him from the property, he contends "the eviction order could be revived at any time" and that his requested injunction is appropriate because "the balance of the hardships tips sharply in [his] favor" and he "has raised 'serious questions' going to the merits . . . ." (Id.)

As a preliminary matter, a Rule 62(c) injunction appears premature since Plaintiff has not yet filed an appeal to the Ninth Circuit.[5] Davila v. State of Tex., 489 F. Supp. 803, 810 (D.C. Tex.

---

[4] The Inter-Tribal Court of Appeals heard argument on Plaintiff's appeal in March 2006, but has not yet issued a decision. (Pl.'s Mot. for an Injunction at 3.)

[5] Plaintiff states he "intends to perfect an immediate appeal to the Ninth Circuit" only if "the Court leaves undisturbed
(continued...)

8

1980) (stating "Rule 62(c) is not properly invoked until 'an appeal is taken'"). In addition, even if Plaintiff demonstrated the existence of serious questions on the merits and a balance of hardships tipping in his favor, these two factors are not dispositive in the context of a Rule 62(c) motion. See Envtl. Prot. and Info. Ctr. v. U.S. Forest Service, 2006 WL 2084856, *2, n.2 (E.D. Cal. July 25, 2006) (explaining that these factors are applicable to a request for preliminary injunctive relief, but not for an injunction pending appeal) (citing McAfee v. United States, 2006 WL 829135, *2 (E.D. Cal. 2006), and Digital Comm'n Network, Inc. v. AB Cellular Holding LLC, 1999 WL 1044234, *4 (C.D. Cal. 1999)). Rather, four factors, which were articulated by the Supreme Court in Hilton v. Braunskill, 481 U.S. 770, 776 (1987), are examined when a party files a Rule 62(c) motion: "(1) whether the . . . applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a[n] injunction; (3) whether issuance of the [injunction] will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." (Id.)

As to the second factor, since Defendants cannot enforce the eviction order while Plaintiff appeals the tribal court judgment to the Inter Tribal Court of Appeals, Plaintiff has not demonstrated he will suffer irreparable injury if an injunction does not issue at this time. As to the third and fourth factors, Plaintiff has not briefed or otherwise shown the public interest favors granting the proposed injunction or that other parties would not be substantially injured by

---

[5](...continued)
the existing final judgment." (Pl.'s Mot. for an Injunction at 3.)

its issuance. Therefore, since three of the four <u>Hilton</u> factors indicate an injunction should not issue, Plaintiff's motion is denied.[6]

## CONCLUSION

For reasons stated herein, Plaintiff's motion to amend the judgment filed July 6, 2006, and his motion for an injunction pending appeal are denied.

Dated: August 31, 2006

<u>/s/ Garland E. Burrell, Jr.</u>
GARLAND E. BURRELL, JR.
United States District Judge

---

[6] Although Plaintiff argues that the success on the merits factor favors an injunction, this factor need not be addressed since the other three factors do not favor an injunction.